# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0405V

| | |
|---|---|
| JOSEPH MATTACHIONE,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: September 29, 2025 |

*Amy A. Senerth, Muller Brazil LLP, Dresher, PA,* for Petitioner.

*Katherine Carr Esposito, U.S. Department of Justice, Washington, DC,* for Respondent.

### DECISION DISMISSING CASE[1]

On January 8, 2021, Joseph Mattachione filed a petition[2] for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA"), as defined by the Vaccine Table, accompanied by residual effects lasting more than six months, after receiving an influenza ("flu") vaccine on September 23, 2020. Second Amended Petition at 1, ¶¶ 2, 9.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Petitioner filed amended petitions on February 10 and May 10, 2022, providing additional details and medical records citations. *Compare* Petition, ECF No. 1 *with* Amended Petitions, ECF Nos. 30-31. Throughout this order, I will cite to the last amended petition filed, the second amended petition.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

I hereby DENY entitlement in this case, because Petitioner cannot preponderantly establish that he suffered the residual effects of his alleged SIRVA for more than six months. Section 11(c)(1)(D)(i) (statutory six-month requirement). This fundamental requirement applies to any kind of Vaccine Act case, Table or not, and hence the inability to meet it constitutes a basis for the claim's dismissal.

### I.     Relevant Procedural History

Along with the Petition, Mr. Mattachione filed only the vaccine record (Ex. 1) and a declaration[4] from counsel indicating the Petition was being filed prematurely without medical records, "[d]ue to the potential Table amendment proposed by [R]espondent,[5] which would divest victims of shoulder injuries related to vaccine administration (SIRVA) the benefit of a 'Table' claim" (Ex. 2 at ¶ 1). Over the subsequent seven months, Petitioner filed a declaration[6] and the medical records required by the Vaccine Act, along with a more complete vaccine record.[7] Exs. 3-8, ECF Nos. 6-7, 9, 13; *see* Section 11(c). On June 23, 2021, the case was activated and assigned to the Special Processing Unit (OSM's process for attempting to resolve certain, likely-to-settle claims). ECF No. 15.

During the subsequent fourteen-month period, Petitioner filed two amended petitions, two additional declarations (the second of which was properly signed under penalty of perjury),[8] a response addressing noted deficiencies in his claim, and updated medical records. Amended Petitions, ECF Nos. 30-31; Exs. 9-13, ECF Nos. 23-24, 36, 39; Petitioner's Response to the August 16, 2021 Order ("Response"), ECF No. 25. Regarding his assertion that he continued to suffer the residual effects of his alleged SIRVA for more than six months, Petitioner relied upon the symptoms mentioned in the

---

[4] The declaration was signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Ex. 2.

[5] On July 20, 2020, the Secretary of Health and Human Services proposed the removal of SIRVA from the Vaccine Injury Table. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Proposed Rule, 85 Fed. Reg. 43794 (July 20, 2020). The proposed rule was finalized six months later. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Final Rule, 86 Fed. Reg. 6249 (Jan. 21, 2021). Approximately one month later, the effective date for the final rule was delayed. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Delay of Effective Date, 86 Fed. Reg. 10835 (Feb. 23, 2021) (delaying the effective date of the final rule until April 23, 2021). On April 22, 2021, the final rule removing SIRVA from the Vaccine Table was rescinded. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Withdrawal of Final Rule, 86 Fed. Reg. 21209 (Apr. 22, 2021).

[6] Although this declaration was identified as an affidavit, it was not notarized or signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Ex. 7.

[7] The more complete vaccine record was filed as Ex. 4. It will be cited as the vaccine record in this case.

[8] The only difference between these two second and third declarations is that the third declaration is signed under penalty of perjury as required by 28 U.S.C.A. § 1746. *Compare* Ex. 9 *with* Ex. 11.

records from his last two PT sessions, on February 23 and March 5, 2021. Response at 3.

On December 2, 2022, Respondent filed his Rule 4(c) Report opposing compensation. ECF No. 41. Insisting that Petitioner failed to provide the preponderant evidence needed to establish six-months severity, Respondent argued that the claim should be dismissed. *Id.* at 8-11; *see* Section 11(c)(1)(D)(i). He also maintained that Petitioner failed to meet three of the four criteria for a Table SIRVA as set forth in the Qualifications and Aids to Interpretation ("QAI"). Rule 4(c) Report at 12-14; *see* 42 C.F.R. § 100.3(c)(10)(ii), (iii), & (iv) (QAI criteria related to pain onset, symptom location, and a viable alternative cause).

On August 24, 2023, I issued a second order, instructing Petitioner to provide the preponderant evidence needed to show six-months sequelae to avoid dismissal of his claim. Order to Show Cause at 10-11, ECF No. 42. I also noted the additional deficiencies related to Petitioner's Table SIRVA claim and encouraged the parties to renew their litigative risk settlement discussions. *Id.* at 9-11.

On September 27, 2023, the parties filed a joint status report stating that Respondent "[wa]s not interested in litigative risk settlement at this time." ECF No. 43. In his response to the order to show cause, Petitioner provided argument related to onset and severity only. Petitioner's Response to Order to Show Cause Response"), filed Oct. 24, 2023, ECF No. 44. He did not address other noted deficiencies or provide any additional evidence to support his claim.

## II. Applicable Legal Standards

Petitioners carry the burden of establishing the matters required in the petition by a preponderance of the evidence. Section 13(a)(1)(A). One such requirement is "documentation demonstrating that [the petitioner][9] ... suffered the residual effects or complications of such [vaccine-related] illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." Section 11(c)(1)(D)(i); *see also Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

---

[9] Or other vaccinee, e.g., a minor or other person who is unable to represent his or her own interests, on behalf of whom the claim is brought.

3

As stated by Congress when amending the Vaccine Act in 1987, the six-month severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, 2313–373. The only exception is the alternative added in 2000, a showing that the vaccine injury required inpatient hospitalization and surgical intervention. *Children's Health Act of 2000*, Pub. L. No. 106–310, § 1701, 114 Stat. 1101, 1151 (2000) (codified as amended at 42 U.S.C. § 300aa–11(c)(1)(D)(iii)). This exception was added to allow compensation in intussusception cases which often required surgical intervention but then resolved in less than six months. *Id.*

The Act prohibits finding a petition requirement "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Medical records must be considered, *see* Section 13(b)(1), and are generally afforded substantial weight. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

It is thus certainly the case that factual matters required to prove elements of a Vaccine Act claim may be established by a *mix* of witness statements and record proof, with the special master required to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 (2013) (citing Section 12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

### III. Relevant Factual History

#### A. The Medical Records

Prior to receiving the flu vaccine, Mr. Mattachione suffered from obesity and type 2 diabetes (controlled without the need for insulin), as well as other common illnesses. Ex. 3 at 53-279. In 2018, he experienced pain in the opposing right shoulder, attributed to severe glenohumeral osteoarthritis and a rotator cuff tear. Ex. 5 at 21. He underwent arthroscopic surgery on his *right* shoulder in August 2018. *Id.* at 8-10, 15-21, 25, 69-71 (orthopedic records); *see also* Ex. 3 at 241-252 (pre-surgery clearance by his primary care provider ("PCP")). Records from post-surgical physical therapy ("PT") show Petitioner made a good recovery. Ex. 5 at 27-68.

On September 23, 2020, Petitioner visited his PCP for medication refills and treatment of a skin rash. Ex. 3 at 49-52. The same day, at a Walgreens drugstore, he received the flu vaccine in his left deltoid. Ex. 4 at 2-4.

Twenty-seven days later, on October 20, 2020, Petitioner participated in a telehealth visit with his PCP, complaining of pain in his left shoulder that radiated to his upper arm. Ex. 3 at 41. Estimating that he had been experiencing these symptoms for three weeks after receiving a flu vaccine and reporting that he was taking indomethacin[10] for his pain, he described his pain as aching most of the time and stabbing with certain movements. *Id.* at 44-45. Petitioner denied "actual shoulder joint pain." *Id.* at 45. The PCP prescribed anti-inflammatory therapy and nerve pain medication (amitriptyline[11]) if Petitioner's condition had not improved. *Id.* at 47.

On November 4, 2020, Petitioner visited his orthopedist and reported left shoulder pain. Ex. 5 at 13. Indicating that he did not recall any trauma, he estimated he "ha[d] been dealing with . . . the pain for the past 2 to 3 months," placing onset prior to vaccination, in early August or September 2020. *Id.* He described his pain as localized to the shoulder joint, adding that "the pain is aggravated with prolonged use of the arm and overhead activity, improved with rest." *Id.* After reviewing x-rays which revealed severe AC joint arthropathy and mild glenohumeral arthritis, the orthopedist assessed Petitioner as experiencing pain consistent with a rotator cuff tear, AC joint arthritis, and outlet impingement and ordered an MRI. *Id.* at 13-14.

On the intake form for the MRI (performed on November 14, 2020), Petitioner now described his pain as sudden and persistent since receiving the flu vaccine on September 23, 2020. Ex. 6 at 7. The MRI revealed tendinosis and low-grade tears of the infraspinatus and supraspinatus, a SLAP[12] tear of the labrum, advanced degenerative osteoarthrosis of the AC joint with rotator cuff encroachment by marginal osteophytes, and moderate subacromial subdeltoid bursitis. *Id.* at 5.

Five days later, on November 19, 2020, Petitioner visited his PCP for his annual physical. Ex. 3 at 15. At that visit, he received tetanus, diphtheria, acellular pertussis

---

[10] Indomethacin is "a nonsteroidal anti-inflammatory drug; used in the treatment of rheumatoid arthritis, [and] osteoarthritis . . . ; administered orally or rectally. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 932 (32th ed. 2012).

[11] Amitriptyline hydrochloride is "a tricyclic antidepressant . . . also used in the treatment of . . . chronic pain." DORLAND'S at 63.

[12] SLAP stands for "superior labral anteroposterior." MEDICAL ABBREVIATIONS at 552 (16th ed. 2020).

5

("Tdap") and Shingles vaccines in his left shoulder. *Id.* at 29. There is no mention of left shoulder pain in the medical record from that visit. *Id.* at 15-36.

On December 17, 2020, Petitioner returned to the orthopedist for a re-evaluation of his left shoulder. Ex. 5 at 11. Reporting that he was "doing about the same," he indicated [h]e [wa]s still having stiffness in the shoulder." *Id.* After reviewing the results of the MRI, the orthopedist opined that Petitioner's symptoms were consistent with adhesive capsulitis. He administered a corticosteroid injection and prescribed PT.

At his first PT session on January 8, 2021, Petitioner exhibited limitations in range of motion ("ROM"). Ex. 8 at 26. Assessed as having a functional index of 42 out of 80, he reported at least moderate difficulty performing ten of the twenty listed activities. *Id.* at 27. But by the very next session (on January 12, 2021), Petitioner was able to perform all exercises, although he experienced shooting discomfort and tingling along the outside of his arm to his hand. Ex. 8 at 23. He continued to report "pins & needles at times" at his next session. *Id.* at 22. By his fourth session on January 22nd, Petitioner indicated that his neck was not "bother[ing] him as much" and he didn't notice the "tingling" unless he concentrated on it. *Id.* at 21.

By his first PT session in February 2021, it was noted that Petitioner's left shoulder ROM - rated as 85 percent - was improving. Ex. 8 at 20. Petitioner also reported that when he went to the gym, his left shoulder "bothered" him when performing "chest flys" and working on his triceps. *Id.* At his sixth PT session on February 12th, Petitioner reported "having no pain in [the] neck or going [down the] arms" and further improvement in his ROM. *Id.* at 19.

During three more PT sessions in February 2021, Petitioner's left shoulder condition continued to improve. Ex. 8 at 12-16. Assessed as having a functionality rating of 66 out of 80 on February 19th, Petitioner reported experiencing at least moderate difficulty on only three out of ten activities. *Id.* at 15. He exhibited shoulder flexion of 160 degrees and abduction of 170 degrees with a strength rating for both of four of five. *Id.* at 14. Petitioner also stated that he had been "doing lots of heavy lifting at work so his shoulder [wa]s sore." *Id.* at 13. By his tenth PT session on February 23rd, five months post-vaccination, he reported his "shoulder [wa]s good but still has issues." *Id.* at 12.

When discharged from PT on March 5, 2021, following eleven PT sessions and five months and ten days post-vaccination, Petitioner reported no difficulty with most activities, and only a little difficulty sleeping, doing laundry, and throwing a ball. Ex. 8 at 10-11. Marked down one point for those three categories, Petitioner's functionality rating was 77 out of 80. *Id.* at 11. His shoulder movement had improved to 175 degrees for

6

flexion and 170 degrees for abduction. Petitioner was assessed as having met all PT goals. *Id.* at 10.

On April 27, 2021, Petitioner visited a new PCP to establish care. Ex. 12 at 5. The PCP noted that Petitioner suffered from type 2 diabetes and hyperlipidemia and had a body mass index signifying he was overweight. *Id.* at 7-8. No other conditions were noted during the physical examination, however, and Petitioner was reported to have received his second dose of the COVID vaccine in April 2021. *Id.* at 5, 7. Petitioner was instructed to monitor his blood pressure, watch his diet, continue his medications, and return in four weeks for a physical. *Id.* at 8.

In September 2021, Petitioner completed paperwork seeking to participate as a donor in a plasmapheresis program. Ex.13 at 14-16. He also underwent lab work and testing in September and December 2021. *Id.* at 12-13, 17-20. Petitioner discussed the results of this testing with his new PCP on December 9, 2021. Ex. 12 at 9-12. There is no mention of left shoulder pain or limited ROM at any of these appointments.

The first time Petitioner mentioned any left shoulder issues after his March 5, 2021 PT discharge was at an appointment more than a year later, on March 25, 2022, to review the results of recent testing. Ex. 12 at 13; Ex. 13 at 9-11 (lab results from testing performed on week earlier). At this visit, Petitioner reported several multiple conditions including left shoulder pain which he stated began two years ago after a vaccination. Ex. 12 at 13. Reporting that he sought treatment from his orthopedist, was diagnosed with adhesive capsulitis, completed PT, and had filed a SIRVA claim, Petitioner indicated that he continued to experience reduced ROM and still did home exercises. *Id.* Observing limitations in Petitioner's ROM, the PCP added pain in the left shoulder and left shoulder adhesive capsulitis to Petitioner's diagnoses. *Id.* at 15. Along with the usual instructions related to Petitioner's diabetes and overall condition, the PCP added a PT referral. *Id.* at 16; *see* Ex. 13 at 7 (referral). In this record, it was noted that Petitioner had received a fourth COVID dose in November 2021. Ex. 12 at 15.

No updated medical records have been filed. It appears Petitioner did not act upon the 2022 PT referral.

### B. Declarations, Literature, and Written Responses

Although labeled an affidavit (but not dated, notarized, or signed under penalty of perjury), Petitioner's first declaration was obviously executed immediately prior to its filing date - February 18, 2021, approximately one month after the claim was initiated and less than five months post-vaccination. *See* Ex. 7. In it, Petitioner addresses his prior right shoulder pain and the onset of his later left shoulder pain. *Id.* Regarding the duration of

7

his symptoms, he indicates that he "continue[d] to suffer the residual effects or complications of Left Shoulder injuries for which were caused by the Influenza vaccine." *Id.* at ¶ 6.

After I issued an order in August 2021 identifying multiple weaknesses in his claim, Petitioner filed a second declaration, an article discussing SIRVA injuries, and a written response. Ex. 9. Again, despite being labeled an affidavit, the declaration was not notarized or signed under penalty of perjury. *Id.* at 3.

In his second declaration and written response, Petitioner dismissed the discrepancies related to the timing of pain onset, characterizing them as only estimates. Ex. 9 at 2-3; Response at 1-2. Regarding the two additional vaccines he received in his left deltoid in November 2020, less than two months post-vaccination, he explains that "[a]t the time, [he] did not realize [his] left shoulder pain was caused by the flu shot administered on September 23, 2023." Ex. 9 at 5; *accord.* Response at 2-3. Insisting that the symptoms he described were consistent with a SIRVA injury, he relies upon his condition at the last two PT sessions in late February and early March 2021, to maintain that the sequelae of his alleged SIRVA injury continued for more than six months. Ex. 9 at 6, 9; Response at 3. In his declaration, he asserts that "[w]hile [he] ha[s] not sought any additional formal treatment, to this day, [he] still experience[s] some pain and lack of full mobility." Ex. 9 at 7.

The open access[13] medical article Petitioner provided contains case studies of two instances of SIRVA injuries involving injury to the teres minor tendon insertions as seen on an MRI. Ex. 10 (N. Natanzi et al., *Teres minor injury related to vaccine administration*, 15 Radiology Case Reports 552-555 (2020)). Characterizing SIRVA injuries as a rare, but emerging, problem, the authors state that this possible injury should be considered for any patient with chronic shoulder pain following vaccination. *Id.* at 1.

After Respondent reiterated his belief that Petitioner had not provided sufficient evidence of severity (ECF No. 34), Petitioner filed a third declaration. In it (signed under penalty of perjury), he expounded on the reasons he had not seek treatment for his left shoulder pain from early March 2021 until late March 2022, relying instead on a home exercise program, ibuprofen, heat, and ice. Ex. 11 at 7. Regarding the PT prescribed in late March 2022, he maintained that he "did not schedule any treatments because of concerns for out of pocket expenses and difficulty getting time away from work." *Id.* The remainder of this third declaration is identical to the second declaration filed in early

---

[13] The publisher of this article, Elsevier, indicates that "[a]ll articles in open access journals which are published by Elsevier have undergone peer review and upon acceptance are immediately and permanently free for everyone to read and download." https://www.elsevier.com/open-access/open-access-journals (last visited Aug. 16, 2023).

December 2021.[14] In his response to the order to show cause, Petitioner insisted the record contains "strong evidence to support that [his] symptoms were unlikely to resolve within 18 days of his last formal treatment date of *March 23, 2021*." Show Cause Response at 4. Undoubtedly, Petitioner meant to refer to the date of his PT discharge, March 5, 2021. I will assume the reference to this later date (the date through which Petitioner must show his symptoms continued) to be a simple mistake.

## IV. Analysis

### i. Record Inconsistencies

The medical records show that Petitioner often provided inexact and differing medical histories. At his initial visit (with his PCP), three weeks and six days post-vaccination, Petitioner characterized his pain as located in his upper shoulder and arm, specifically denying any joint pain. Ex. 3 at 41, 45. At his next appointment (with the orthopedist), however, Petitioner described pain *localized* in his shoulder joint, provided a time frame for his pain which would place onset prior to vaccination, and stated that he recalled no specific trauma which would explain his pain. Ex. 5 at 13. Then, in the context of his MRI approximately ten days later, he described his pain as sudden and persistent *since* receiving the flu vaccine. Ex. 6 at 7. Yet Petitioner voiced no objection to receiving the Tdap and Shingles vaccines in the same left arm less than one week later, on November 19, 2020. *See* Ex. 3 at 29.

Petitioner argues that he did not deviate from his typical practice of receiving all vaccinations in his left (non-dominant) arm because he did not realize, at that time, that the flu vaccine he had previously received *could* have caused his left shoulder pain. Ex. 11 at ¶ 5. However, this explanation creates more confusion regarding the timing and sources of the symptoms Petitioner experienced in late 2020.

Additionally, Petitioner's claim is further complicated by his prior *right* shoulder issues and the results of his *left* shoulder MRI, which revealed findings that could establish the a cause of Petitioner's symptoms- subclinical conditions which are not usually aggravated by vaccination (i.e., the SLAP tear). Ex. 6 at 5 (MRI results). And many of the symptoms Petitioner did describe, such as shooting discomfort and radiating tingling are atypical for SIRVAs, and thus more likely attributable to the kind of findings obtained from Petitioner's MRI. Ex. 8 at 23. Furthermore, Petitioner appears to have retained Petitioner's counsel in December 2020 – timing which would have undoubtedly affected his

---

[14] *Compare* Ex. 9 at 7-8 *with* Ex. 11 at 7-8 (showing the only differences between the documents were the additional information added to paragraph 7, the additional section 8, and the added designation indicate the signature was under penalty of perjury). This third declaration contains two paragraphs labeled 8. The first appears to be the paragraph previously labeled 7 in the second declaration which was replaced by the new paragraph 7 containing the added information.

recollections during that time. *See,* e.g. Ex. 5 at 6 (medical records request dated December 17, 2020).

### ii.   Insufficient Proof of Severity

Assuming, however, that all symptoms reported by Petitioner in late 2020 - early 2021 can be linked to the flu vaccine, satisfaction of the Vaccine Act's severity requirement still required him to prove that he suffered these symptoms *through March 23, 2021* (assuming an immediate onset on the date of vaccination – September 23, 2020). I find the record does not so preponderate.

The symptoms Petitioner reported, following a corticosteroid injection on December 17, 2020, were mild. And he made good progress during PT sessions attended January through early March 2021. By his third PT session on January 15, 2021, Petitioner reported feeling only intermittent tingling. Ex. 8 at 22. At his next session on January 22, 2021, he stated he did not notice the tingling unless he concentrated on it. *Id.* at 21. By his next PT session on February 2, 2021, Petitioner had returned to the gym, although he acknowledged that his triceps bothered him when he performed "flys." *Id.* at 20. And he described overall improvement, with only soreness on February 12, 2021. *Id.* at 17. Petitioner again reported only soreness at his next PT session on February 19, 2021, attributing it to the heavy lifting he was performing at work. *Id.* at 13. Although he reported some remaining issues on February 23, 2021, Petitioner did not provide further details as to what those issues may be. *Id.* at 12. At his discharge on March 5, 2021, he reported only slight difficulty with three of the 20 listed tasks. *Id.* at 11. And there are no ongoing symptoms listed in that record.

Furthermore, Petitioner's symptoms clearly had resolved *before* his April 27, 2021 appointment establishing care with a new PCP. *See* Exhibit 12 at 5-8. And given the comprehensive nature of this record and fact that the purpose of the visit was to establish care with a new PCP, it is highly unlikely he would not have mentioned the symptoms he had just been treated for the month prior (or that physicians would not have recorded them). *Id.* Additionally, Petitioner's attempt to link the symptoms he complained of in March 2022 - eighteen months post-vaccination and fourteen months after the Petition was filed, to his alleged vaccine injury - is similarly unpersuasive.

Ultimately, Petitioner's argument that strong evidence exists to demonstrate that his symptoms continued through March 23, 2021, lacks sufficient corroboration. The absence of any noted symptoms; assessment of having met all goals; and only slight, self-reported difficulties with three functional tasks at his PT discharge on March 5, 2021, all support the conclusion that Petitioner was almost fully recovered at that time. Given the improvements outlined in the PT records, and the rate of progress obtained during

that time, it is unlikely any residual symptoms Petitioner *may* have been experiencing continued much beyond March 5th. Most importantly, Petitioner has failed to provide *any* evidence, beyond his own assertions, establishing that they did. Thus, he has failed to meet his burden of proof related to severity.

In many cases, evidence of treatment largely ending close-in-time to a severity cut-off date can be balanced against other evidence allowing the inference that the claimant's sequelae likely continued past the cut-off date. Not so here.

## Conclusion

The Vaccine Act prohibits me from finding a petitioner entitled to compensation based upon the petitioner's claims alone. Section 13(a). To date, and despite ample opportunity, Petitioner has failed to provide preponderant evidence that he suffered the residual effects of his injury for more than six months or suffered an in hospital surgical intervention. Section 11(c)(1)(D).

Petitioner was informed that failure to provide preponderant to satisfy the Vaccine Act's severity requirement would be treated as either a failure to prosecute this claim or as an inability to provide supporting documentation for this claim. Accordingly, this case is DISMISSED for insufficient evidence. The Clerk of Court shall enter judgment accordingly.[15]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.